13102.  MUTUAL LIFE INSURANCE COMPANY OF NEW YORK *v.* JOHNSON.

Where the double-indemnity clause of a policy of insurance stipulated that " this double indemnity shall not be payable in the event of the insured's death as a result of military or naval service in time of war, nor shall it be payable in the event of the insured's death at any time by his own act, whether sane or insane, nor if such death be caused directly or indirectly, wholly or partly, by riot, insurrection, or war, or any act incident thereto, nor if such death be a result of participation in aeronautics or submarine operations, nor if such death result from any violation of law by the insured, or from police duty in any military, naval, or police organization, or directly or indirectly from bodily or mental infirmity or disease of any sort," the insurance company was not liable for such double indemnity when it conclusively appeared that at the time of the death of the insured he was enlisted in the military service of the United States and was being transported as a part of the army of the United States on a troop-train, from Fort Oglethorpe, Georgia, to San Francisco, California, at which point the military body thus being transported and of which he was a member was to be embarked for Honolulu, to join and become a part of other military forces of the United States serving there, and that his death was caused by being accidentally struck on the head by a girder of a railroad bridge over which the train was passing; the United States being then and thereafter at war, even though only technically so, with the empires of Germany and Austria and their allies.

DECIDED MARCH 7, 1922.

Action on insurance policy; from Newton superior court — Judge Hutcheson. October 18, 1921.

Certiorari was granted by the Supreme Court.

*Bryan & Middlebrooks, Frederick & Allen,* for plaintiff in error.

*King & Johnson,* contra.

LUKE, J.  Johnson, as beneficiary, sued the Mutual Life Insurance Company of New York, for $4,000, alleged to be due upon an insurance policy. The face amount of the policy was $2,000, but, the insured having met his death by accidental means, the beneficiary alleged that he was entitled to collect double indem-

nity, for the reason that the policy provided that " if there further be received at said home office due proof that such death resulted directly from bodily injury, received after the date of issue of this policy, independently and exclusively of all other causes, and that such bodily injury was effected solely through external, violent, and accidental means, and that such death occurred within sixty days after the date of such bodily injury, [the company] promises to pay to said beneficiary, instead of the face amount of this policy, four thousand dollars (double the face amount of this policy, herein called double indemnity)," etc. The language here quoted from the policy was followed by the words: " provided, however, that this double indemnity shall not be payable in the event of the insured's death as a result of military or naval service in time of war, nor shall it be payable in the event of the insured's death at any time by his own act, whether sane or insane, nor if such death be caused directly or indirectly, wholly or partly, by riot, insurrection, or war, or any act incident thereto, nor if such death be a result of participation in aeronautics or submarine operations, nor if such death result. from any violation of law by the insured, or from police duty in any military, naval, or police organization, or directly or indirectly from bodily or mental infirmity or disease of any sort."

The insurance company admitted in its answer that it was due the face amount of the policy, $2,000, but contended that, while the death of the insured was caused by accidental means, it was not liable for the double indemnity, for the reason that the insured was accidently killed on June 27, 1919, while in the military service of the United States of America in time of war, and his death was a result of such military service or was caused directly or indirectly, wholly or partly, by war or an act incident thereto, or from police duty in the military, on account of the following facts: At the time of his death the insured was being transported, along with other troops of the United States and as a part of the army of the United States, on a troop train on the Union Pacific Railroad, the said railroad, together with other railroads in the United States, under the railroad-control act of March 21, 1918, being then in the possession of and operated by the United States; that the military unit which was being transported and of which the said insured was a member was a part of the military forces of the United

States, and was being transported from Fort Oglethorpe, Georgia, to San Francisco, California, at which point the said military body was to be embarked for Honolulu, to join and become a part of other military forces of the United States serving there: that near Granger, Wyoming, on said railroad is an iron overhead bridge; that as said train was passing over the bridge the insured was either standing on the steps of one of the cars of the train, or was looking out of the window of one of the cars, when he was struck on the head by the first upright girder of the bridge and was knocked from the train and killed; that the insured enlisted in the army of the United States on June 10, 1919, and thus entered into the military service of the United States, the United States being at that time and at the time of his death on June 27, 1919, and thereafter, at war with the empires of Germany, Austria, and their allies; and that the policy of insurance was issued on June 1, 1919.

The judge of the superior court, by agreement of the parties, determined this case upon the petition and the answer thereto, without the intervention of a jury. He rendered a judgment in favor of the plaintiff for the double indemnity, to wit, $4,000, instead of $2,000, which the insurance company admitted it was liable for. Writ of error is here to review this judgment, and the controlling question to be passed upon in this case is the proper construction of the particular double-indemnity " war clause " in the policy sued on. The plaintiff's position is that the insured's death was not the result of military or naval service in time of war, and was not caused directly or indirectly, wholly or partly, by war or any incident thereto; that the policy did not prohibit the insured from becoming a member of the military forces of the United States, and that the military duties of the deceased at the time of his death and the presence of the insured upon the troop-train simply furnished the condition and occasion by which his death was made possible; that the technical state of war with Germany at the time of his death was not the cause of his death; that in the policy, there was no limitation of the right to travel and that the fact that he was on the troop-train and was killed in the manner alleged was not a result of war; that, in fact, the contract should be so construed as to mean that the double indemnity should be collectible unless the death of the insured was caused by the actual hostilities of war or was incidental thereto. On the other hand

the defendant insurance company contends, as pleaded in its answer, that the insured was engaged in the military service of the United States while the United States was at war with Germany and her allies; that at the time of his death the insured was being transported as a part of the war forces, and of a military unit from Fort Oglethorpe, Georgia, to San Francisco, California, and from thence was to be transported to Honolulu, and thus, while so serving as a part of the military forces of the United States, his death was caused, directly or indirectly, wholly or partly, by reason of the state of war existing and by the transportation and use of the insured as an act incident to the war.

There can be no question that at the time of the death of the insured the United States was, in a technical sense at least, in a state of war. Although the armistice had been signed and there had been a cessation of actual hostilities, the United States was at war with Germany and her allies. See Hamilton v. Kentucky Distilleries, 251 U. S. 46. We think that the double-indemnity provision of this policy of insurance, properly construed, means that the insurance company was not to be liable for double indemnity in the event the insured was accidentally killed while a member of the military forces of the United States, directly or indirectly, wholly or partly, by reason of the war status of the country. We are aware that some of the courts of last resort, in construing double indemnity or war clauses in insurance policies, have construed such double indemnity or war clauses so as to provide that the death of the insured must have been caused by the war. In other words, it has been held that the death of the insured must have been occasioned while he was engaged in actual warfare or was on his way to the war front. It must be borne in mind, however, that in each of those cases such construction was placed upon the particular provisions of " war clauses " then under consideration. Upon thorough investigation of authorities we do not find that the particular double-indemnity clause that we have here for review was passed upon.

It being admitted that the insured met his death by accident while in the actual service of the miliary of the United States, incident to the state of war then existing, it was error for the court to render a judgment in favor of the plaintiff for the double-indemnity provided for in the policy.

*Judgment reversed. Broyles, C. J., and Bloodworth, J., concur.*